ESSEX COUNTY COURT OF COMMON PLEAS.

MARY E. LANGIIELD, PETITIONER-APPELLEE, v. FEDERAL SHIPBUILDING AND DRY DOCK COMPANY, RESPONDENT-APPELLANT.

Decided January 20, 1947.

For the petitioner-appellee, *David Z. Jesselsohn* and *Louis C. Jacobson.*

For the respondent-appellant, *Stryker, Tams & Horner* (by *Thomas Moloney* and *John J. Monigan*).

FLANNAGAN, C. P. J.  The petitioner was employed as a part-time canteen worker at an hourly rate.  She was injured in the course of the performance of the duties of her employment, and it is conceded that she is entitled to compensation for her injury.  The only difference arising between the contesting parties on this appeal is as to the method of computing the petitioner's "daily wage" rate under the provisions of the statute, *R. S. 34:15–37; N. J. S. A. 34:15–37,* which provides that where the rate of wages is fixed by the hour, "the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of the work involved."

It is said that the words "ordinary day in the character of the work involved" refers to employees in general doing work of the same character in the same plant, rather than to the ordinary day of the particular employee who has sustained injury. I am of the opinion that the statute contemplates compensation on the basis of the earnings of the employee herself, rather than upon that of herself and other employees combined. If this be true then the issue resolves itself into a question of fact, to wit, what was the customary number of working hours constituting an ordinary day in the petitioner's experience during the period of her employment with respondent?

The petitioner was hired in the beginning of November, 1942, and worked for respondent until November 19th, 1943, when her injury occurred, a period of substantially one year.

She was hired as a part-time canteen worker for four hours per day at 65½ cents per hour. So that the initial period of her association with respondent was on the basis of four hours work per day. Her hourly rate continued the same throughout the entire period of her employment regardless of the nature of the duties performed.

During the concluding period of her employment she was likewise employed on the basis of four hours per day of service, and was working as a canteen worker, although she had in the intervening period worked for a time as a cafeteria worker.

The unusual and extraordinary may, by sufficient repetition, recurrence, or period involved, become the customary and ordinary.

The question is whether petitioner, having contracted, and started her initial period or hiring, on the basis of a customary and ordinary working day of four hours, and having ended her employment while working on the same schedule, the variance from that status in the intervening period was of such duration or frequency as to convert what under the contract of employment and initial period was customary and ordinary into the unusual and extraordinary, thus establishing a new customary and ordinary working day period.

Petitioner's testimony shows that this was not the case. She testified that when she worked as a canteen worker (her initial employment status) she worked part-time, namely, four hours per day, and when this was varied she substituted as a cafeteria manager worker at full pay, namely eight hours per day. The following questions and answers appear in the record:

"*Q*. This accident occurred a little over a year after you first commenced your employment? *A*. Yes.

"*Q*. During that year about how much of that year had you worked part-time and full time? How would you divide it up? *A*. I would say maybe two or three months, perhaps.

"*Q*. Two or three months as what? *A*. Full time.

"*Q*. And the rest part time? *A*. Part time."

Later in her examination the following testimony was given by her:

"*Q*. And the only time you deviated on the four-hour per day schedule was when you filled in for someone else? *A*. Yes, sir, as manager.

"*Q*. In other words, you took the manager's place when she was out or something like that? *A*. Yes, sir, I managed for almost three months straight when one of the managers went in the hospital."

I find that the customary number of working hours constituting an ordinary day in the character of the work involved herein was four hours; that petitioner worked six days a week, five of which were, throughout the entire period of her employment, at the hourly rate of 65½ cents per hour and the sixth day at (time and one-half) 98.3 cents per hour.

Her weekly compensation rate is found to be $11.35. Her disability I find, as determined by the commissioner, to be partial permanent to the extent of 20 per cent. of total, and temporary disability for 16 2/7 weeks.

I approve and adopt the awards as made by the commissioner to the respective doctors and to the stenographer and the credits as given by him in his determination.

A determination may be submitted under rule 9.