49 N.J. Super. 19 (1957)
139 A.2d 10
EDITH ENGELBRETSON, PETITIONER-RESPONDENT,
v.
AMERICAN STORES, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 8, 1957.
Decided August 13, 1957.
*21 Before Judges FRANCIS, WAUGH and SMITH.
Mr. M. Marvin Soperstein argued the cause for the respondent (Messrs. Margolis & Margolis, attorneys; Mr. Louis C. Jacobson, of counsel).
Mr. John W. Taylor argued the cause for the appellant.
The opinion of the court was delivered by FRANCIS, S.J.A.D.
Petitioner, Edith Engelbretson (apparently should be Engebretsen), suffered a compensable accident while in the employ of American Stores, for which she received an award based upon total and permanent disability. The appeal presents only one issue, that is, the legal propriety of the weekly rate at which the compensation is to be paid. Both the Division of Workmen's Compensation and the County Court fixed it at $30 weekly; the employer maintains it should be $15.33.
Mrs. Engelbretson, who was 70 years of age at the time of the hearing, entered the employ of American Stores in 1942 or 1943. At the time it was difficult to get help on account of the war and she was engaged to work whenever she was needed. No arrangement was made as to the number of hours or days per week to be worked; she was to be subject to call and "supposed to work as long as [she] was needed." The daily and weekly details were left to the discretion of the employer. The rate of pay was $.80 an hour, although at the time of the accident in 1954, it had been increased to $1.15. Her husband was the manager *22 of the meat department in the store at 462 Central Avenue, East Orange, New Jersey, and she was to assist, and thereafter did assist, in that department. Her labors were performed behind the butcher counter, cutting meat and waiting on customers. She was so occupied continuously under the same arrangement until June 3, 1954, the date of her accident.
The meat department operated six days a week, although the regular work week of the employees was five nine-hour days.
In the beginning Mrs. Engelbretson worked four and, apparently, occasionally five days a week. She put in the number of hours requested by her superior; sometimes it was the whole day, nine hours; other times it was less. On reporting for duty, usually she and the employer's representative signed a card which set forth the days and hours of the employment. A sample thereof appearing in the appendix shows, among other things, the dates: "6/2, 6/3," and
"Will work with you from 2 o'clock Wed. and Thurs. until closing time 6 p.m."
The employer produced the work records for 1951, 1953 and 1954. No explanation was given as to the reason for the absence of those relating to the years previous to 1951 or for 1952. However, the company does not dispute that she regularly put in longer days in and prior to 1953.
In 1954, although engaged almost every week (20 weeks between January and the week ending June 5), most of the time (15 weeks) she worked on Wednesday and Thursday for four hours each day. During the other five weeks the work period was two hours each on Wednesday and Thursday in two of them and four or five hours on Thursdays in the remaining three.
On this record, the employer contends that a part time customary work pattern of two four-hour days weekly was established and therefore under N.J.S.A. 34:15-37 the compensation rate should be computed by using the formula: *23 4 hours per day x $1.15 per hour times 5 days a week or $23 weekly. This would produce a compensation rate of $15.33 ($23 x 2/3). The Deputy Director felt that the statute required a different equation, namely, nine hours per day at $1.15 per hour times a five-day week, or weekly wage of $51.75, and a compensation rate of $30 weekly ($51.75 x 2/3 limited to the maximum of $30. L. 1951, c. 105). The County Court did not set out a specific formula but agreed that a work week of five days of at least eight hours daily was in order, and called for payment of the maximum rate of $30.
The statute, N.J.S.A. 34:15-37, around which the controversy centers, provides inter alia:
"`Wages' * * * shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. * * * Where the rate of wages is fixed by the hour, the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of the work involved. In any case the weekly wage shall be found by multiplying the daily wage by five, or if the employee worked a greater proportion of the week regularly, then by five and one-half, six, six and one-half or seven, according to the customary number of working days constituting an ordinary week in the character of work involved. Five days shall constitute a minimum work week. * * *." (Emphasis supplied)
As indicated, the employer maintains that the legislative language requires the daily wage to be ascertained by multiplying petitioner's hourly rate of pay by the number of hours she customarily worked at the time of the accident, i.e., $1.15 x 4 which results in a weekly wage of $23 and a compensation rate of $15.33. The argument is that the direction to use as the multiplier the "customary number of working hours constituting an ordinary day in the character of the work involved" means the number of hours usually worked by the particular employee involved, and not the number of hours customarily or normally worked by employees generally in the type operation in which the employer is engaged. More specifically, the claim is that in the administration of this portion of the Workmen's *24 Compensation Act, the rate of payment is not arrived at by using the number of hours constituting the normal or regular work day as fixed by the employer's custom or practice in the kind of operation involved but on the basis of the customary experience of the particular employee (who is seeking compensation) with respect to hours of employment.
Some support for the employer's position is found in Langheld v. Federal Shipbuilding and Dry Dock Co., 25 N.J. Misc. 159 (Com. Pl. 1947), where the proof showed that the employee was hired as a part-time canteen worker for four hours daily at $.65 1/2 per hour. The court held that the customary number of hours constituting an ordinary day in the character of the work involved was four hours. It was said among other things that the petitioner had contracted and started her initial period of hiring on the basis of a customary and ordinary working day of four hours and the view was taken that
"* * * the statute contemplates compensation on the basis of the earnings of the employee herself, rather than upon that of herself and other employees combined. If this be true then the issue resolves itself into a question of fact, to wit, what was the customary number of working hours constituting an ordinary day in the petitioner's experience during the period of her employment with respondent?"
This decision was not reviewed by an appellate tribunal. However, it was used as a precedent by the employer in Mahoney v. Nitroform Co., 20 N.J. 499 (1956). In that case it appeared that the decedent Mahoney, who had a full-time occupation elsewhere, worked in his spare time nights, week-ends and holidays, an average of 20 hours a week for a corporation which he and others had organized. Citing the Langheld case, the employer claimed compensation should be predicated on five four-hour days and the rate fixed on the basis of 40% (the pertinent death case allowance) of 20 x the hourly rate. The Supreme Court neither approved nor disapproved the Langheld doctrine in its own factual setting but sustained an award resting on a *25 full eight-hour, five-day week, saying that to ignore the contemporaneous full-time employment would "obviously frustrate the objective of wage calculation sought to be attained by the statute." 20 N.J. at page 510. Favorable reference was made to Bennett v. Fertig, 10 N.J. Misc. 1021 (Sup. Ct. 1932), affirmed per curiam 110 N.J.L. 510 (E. & A. 1933), where the employee worked two days a week at $1.50 per day and was granted compensation based upon five days or $7.50 a week.
The effect of the case is that although Mahoney was hired to work in the employer's business such hours as he could or would evenings, week-ends and holidays, the character of the work involved was not determined by the hours devoted to the part-time endeavor but rather by the hours in the ordinary day in his usual occupation, which was of the same type or character.
In seeking the intent of the lawmakers in promulgating N.J.S.A. 34:15-37, we must be mindful that it is remedial social legislation we are interpreting and that all the precedents call for liberal construction in order that its beneficent purposes may be accomplished. Biglioli v. Durotest Corp., 44 N.J. Super. 93, 99 (App. Div. 1957). Nor can we ignore the fact that the ordinary part-time worker today may have full-time employment tomorrow or that a part-time worker (such as a daily houseworker) may have four or five such jobs each week. And an accident suffered in one employment by such person causes pecuniary loss as the result of the consequent physical disability in all the employments or prevents or interferes with later full-time employment. For example, despite the fact that Mrs. Engelbretson was 68 years of age when her mishap occurred, there is no evidence that she was in poor health or unable to work a full week or for additional days for another employer. Her 12 years of experience in the meat department might well have influenced another employer to make use of her skill. It seems obvious from the structure of the act that these facts were in the contemplation of the Legislature and that the thinking was in terms of an ordinary *26 work week of five eight-hour days. Nowhere in the act is part-time employment mentioned, although provision is made for cases of casual employment.
Under the circumstances, we hold the view, contrary to the Langheld case, that in establishing the basis for computing the daily wages for an employee hired at an hourly rate of pay, the allusion to the "customary number of working hours constituting an ordinary day in the character of the work involved" has reference to the regular or normal working day followed by the employer in the line or type of work in which the particular employee is engaged. Cf. Ostatnik v. Hamilton, 43 N.J. Super. 469 (Cty. Ct. 1957). Conversely, in our opinion the reference is not to the number of hours in a day the employee is called upon to work under his contract  unless the type of occupation is such that a lesser number of hours than eight are customary or perhaps necessary because of its nature. To illustrate, if under the conditions of work an employee is exposed to noxious fumes which are dangerous after four hours and so the customary day is limited to such period, the ordinary day for compensation purposes may be that number of hours because of the "character of work involved." Cf. Fear v. Ebony Paint Mfg. Co., 238 Mo. App. 560, 181 S.W.2d 559 (Ct. App. 1944).
The connotation now adopted by us is in accord with that announced by the Supreme Court of Kansas in construing the statute of that state which contains precisely the same terminology as our own. Baker v. Western Power & Light Co., 147 Kan. 571, 78 P.2d 36 (1938), and compare Franklin v. J.P. Floria & Co., 158 So. 591 (La. Ct. App. 1935); Morrison-Merrill & Co. v. Industrial Commission, 81 Utah 363, 18 P.2d 295 (Sup. Ct. 1933).
In the instance before us the undisputed proof shows the character of the work involved to be such that the customary number of hours in the ordinary work day is nine and the customary number of days in the work week is five. Accordingly, petitioner's compensation rate must be reached on the basis of that work day.
*27 The fact that the weekly rate of $30 will give the petitioner more as compensation than she was ever paid as wages by the American Stores cannot be regarded as significant in the exercise of our judicial function. Our task is to construe and give effect to the intention and mandate of the Legislature. Carter v. Ocean Accident & Guarantee Corp., 190 Ga. 857, 11 S.E.2d 16 (Sup. Ct. 1940); Morrison-Merrill & Co. v. Industrial Commission, supra. It is perfectly obvious that if she was engaged to work one eight-hour day doing the very same work, the compensation rate would be $30 weekly (9 hours x $1.15 per hour x 5 days x 2/3, but reduced to the statutory maximum of $30). Having in mind the character of the work involved, it would not be consistent with the spirit and purpose of the legislation to reduce the compensation to approximately one-half of that sum, because the duties of the employment were performed over two four-hour days rather than one day of eight hours duration.
The judgment is affirmed.
WAUGH, J.S.C. (temporarily assigned), (dissenting).
I take no exception to the statement of facts of this appeal as set forth by my learned colleagues in their majority opinion, nor do I disagree with their statement of the legal question presented thereunder. I cannot, however, conclude as they do, that the Legislature intended part-time workers, such as the petitioner herein, to be awarded a compensation rate of $30 per week.
Since the solution of the legal question here centers about an interpretation of the statute wherein the method of computing wages is set forth, that portion of the Workmen's Compensation Act will be quoted in its entirety. R.S. 34:15-37 provides:
"`Wages,' when used in this chapter, shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. Board and lodging when furnished by the employer as part of the wages shall be included and valued at eight dollars per week, unless the money value of such advantages shall have been otherwise fixed by *28 the parties at the time of hiring. Where prior to the accident, the rate of wages is fixed by the output of the employee, the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employee earned during the preceding six months, or so much thereof as shall refer to employment by the same employer. Where the rate of wages is fixed by the hour, the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of the work involved. In any case the weekly wage shall be found by multiplying the daily wage by five, or if the employee worked a greater proportion of the week regularly, then by five and one-half, six, six and one-half or seven, according to the customary number of working days constituting an ordinary week in the character of work involved. Five days shall constitute a minimum week. Gratuities, received regularly in the course of employment from others than the employer, shall be included in determining the weekly wage only in those cases where the employer or employee has kept a regular daily or weekly record of the amount of gratuities so received. In such cases the average weekly amount of gratuities over a period of six months, or for the entire time of employment, whichever period is less, shall be added to the fixed weekly wage to determine the employee's total weekly wage. If no such record has been kept, then the average amount of the weekly gratuities shall be fixed as ten dollars per week."
Preliminarily, the question of the "contract of hiring in force at the time of the accident" should be discussed. I conclude from the record, as, I believe, did the County Court and the Deputy Director, that Mrs. Engelbretson's contract was one whereby she worked two days per week, four hours each day at an hourly rate of $1.15. I find no contrary determination evidenced in the opinion of the majority of this Court.
In reaching its conclusion, the majority has expressly overruled the principle adopted in Langheld v. Federal Shipbuilding and Dry Dock Co., 25 N.J. Misc. 159 (Com. Pl. 1947). That case involved a compensable injury suffered by a part-time canteen worker whose contract called for five four-hour days. The court in that case concluded that the worker's compensation rate should be based upon a 20-hour week and that the wage should be computed by multiplying the hourly rate by the hours worked.
*29 The record in the Langheld case discloses that the petitioner originally was hired and worked a few months as a part-time worker for four hours a day. Thereafter, her working hours changed, and she worked full time for two or three months as a cafeteria manager, but for some time prior to the accident, petitioner had been working as a canteen worker on a four-hour schedule. At the time of the accident the canteen in which she worked was open four hours each day.
The record in the Langheld case further discloses that there was always a canteen open on the respondent's premises (it being a shipbuilding yard and the accident occurred during war years) and that a cafeteria was always open for use of one of the three shifts working.
Based upon that record, Judge Flannagan concluded at 25 N.J. Misc. at page 160:
"It is said that the words `an ordinary day in the character of the work involved' refers to employees in general doing work of the same character in the same plant, rather than to the ordinary day of the particular employee who has sustained injury. I am of the opinion that the statute contemplates compensation on the basis of the earnings of the employee herself, rather than upon that of herself and other employees combined. If this be true then the issue resolves itself into a question of fact, to wit, what was the customary number of working hours constituting an ordinary day in the petitioner's experience during the period of her employment with respondent?"
With this conclusion I agree.
This is not the first time that the ruling in Langheld has been considered by an appellate court, although there was no appeal taken from the decision cited. Justice Brennan, speaking for the New Jersey Supreme Court in Mahoney v. Nitroform Co., 20 N.J. 499 (1956) in his usual careful manner set forth concisely the holding of Langheld, 20 N.J. at page 510:
"But respondent argues that decedents' average work week for Nitroform was 20 hours, and relies on the decision of the former Essex County Court of Common Pleas in Langheld v. Federal Shipbuilding, etc., Co., 25 N.J. Misc. 159 (1947) where in the case of a part-time canteen worker who worked four hours daily compensation *30 was allowed on the four-hour basis, it being held that the statutory provision calling for the multiplication of the hourly rate `"by the customary number of working hours constituting an ordinary day in the character of the work involved"' meant an ordinary day `in the petitioner's experience during the period of her employment with respondent.'"
It is important to note here that the Supreme Court, although the opportunity certainly was present in Mahoney, did not overrule the conclusion which Judge Flannagan reached in the Langheld case. Justice Brennan distinguished the Mahoney case from Langheld on the facts. The following language was used in 20 N.J. at page 510:
"However proper the determination in the Langheld case in the factual setting there presented, any limitation in the instant cases based upon the decedents' employment with Nitroform and ignoring their contemporaneous full-time employments would obviously frustrate the objective of wage calculation sought to be attained by the statute. Any reasonable calculation of the decedents' probable future earning capacity must necessarily take into account their wages in their contemporaneous full-time employments, and it seems clear to us that such is the intent of the statute."
Justice Brennan did not suggest, as does the majority of this court, that the daily wage could be determined by merely multiplying the hourly rate by the number of hours in "the regular or normal working day followed by the employer in the line or type of work in which the particular employee is engaged." I feel that such a simple solution to this problem could not have escaped our Supreme Court if this were the proper construction of R.S. 34:15-37. Rather, the Supreme Court sought out the character of the decedents' total employment picture. It was said, 20 N.J. at page 509, in Mahoney:
"We think the computation based on the weekly wages of the decedents at their regular employments was within the purview of the statute. Basically a calculation determined at the weekly rate is what the statute requires. Such was the decision of our former Court of Errors and Appeals in Bennett v. Fertig, 110 N.J.L. 510 (1933), affirming 10 N.J. Misc. 1021 (Sup. Ct. 1932), where an employee working two days per week at $1.50 per eight-hour day was allowed compensation based upon five days or $7.50 per week. The underlying policy of the provision for wage calculation is to *31 compensate the employee (or, here, the dependents) for the future economic loss incident to the accident. 2 Larson, supra, sec. 60.11, p. 71, states the applicable principles:
`* * * The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future economic capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.'
And this concept is discernible in the several decisions of our courts however the statute has been phrased from time to time. See Schaeffer v. De Grottola, 85 N.J.L. 444 (Sup. Ct. 1914); Smolenski v. Eastern Coal Dock Co., 87 N.J.L. 26 (Sup. Ct. 1915), affirmed 88 N.J.L. 387 (E. & A. 1915); Jordan v. Lindeman & Co., Inc., 23 N.J. Misc. 194 (C.P. 1945)."
In the present case the petitioner's total employment was with the respondent, American Stores. Therefore, if the test as laid out in Mahoney is the total future economic loss suffered by the injured employee, I find it difficult to escape the conclusion that Mrs. Engelbretson's total future economic loss could not exceed the weekly wage which she earned in accordance with her contract of hiring. Of course, since the respondent here concedes that in any event the statute requires a minimum five-day week, I will not discuss the propriety of limiting the petitioner's compensation rate to her actual financial loss. See Bennett v. Fertig, 10 N.J. Misc. 1021 (Sup. Ct. 1932), affirmed per curiam 110 N.J.L. 510 (E. & A. 1933).
I feel that the legislative intent, which after all must be determined in order to give a proper effect to any statute, can be found by reading R.S. 34:15-37 and comparing the method of computing the daily wage of a piece worker with that established for determining the same for an hourly worker. I think it is fair to conclude the Legislature did not intend that these classes of workers be treated differently merely because their employment contracts called for wages to be computed by different standards.
*32 Since, as stated above, the employer here does not take exception to the application of a minimum five-day week in this case notwithstanding its position that the petitioner was a part-time worker, the important section of the statute for present purposes is that concerning the computation of the daily wage.
I note that the Legislature in establishing the method for computing the daily wage of piece workers here did not use as the criteria for that determination the past employment experiences of other employees of the same class either generally or within the employ of the particular employer. Rather, the daily wage is found by dividing the total amount earned by the days worked according to the record of the particular employee injured.
"Where prior to the accident, the rate of wages is fixed by the output of the employee, the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employee earned during the preceding six months, or so much thereof as shall refer to employment by the same employer."
If such be the case, why should a court impose a different result merely because the injured employee is recompensed on the basis of the number of hours worked?
"Where the rate of wages is fixed by the hour, the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of the work involved."
Of further assistance in determining the legislative intent is the fact that the particular phrase which is most trouble-some, i.e., "character of the work involved," is found again in the sentence following the one dealing with computation of daily wage for hourly workers.
"In any case the weekly wage shall be found by multiplying the daily wage by five, or if the employee worked a greater proportion of the week regularly, then by five and one-half, six, six and one-half or seven, according to the customary number of working days constituting an ordinary week in the character of work involved."
*33 It is clear to me that in that instance in dealing with weekly wage computation the phrase "character of work involved" relates to the employee's own experience, since the act is designed to include instances where he, the injured employee, "worked a greater proportion of the week regularly." Since this relates to the particular employee, I see no reason why the same phrase in the preceding sentence should not.
Of similar persuasion is the treatment of employees whose wages include gratuities from others than the employer. An average is taken of the gratuities received in the past by the employee injured if a record has been kept. Ten dollars is set as the total of gratuities received if no record has been kept. The average gratuity is then added to the fixed weekly wage to establish the statutory weekly wage.
If it can be concluded by a fair interpretation of this statute that the lawmakers intended to base the daily wage of hourly workers as well as piece workers and those paid partially by gratuities upon the employment experience and record of the injured employee, I feel that such a result should be reached by this court. I conclude that such a result can fairly be reached, since I see no rational basis for reaching a wage for piece workers and those partially paid by gratuities based upon their own records, while determining the wage of hourly workers by looking to a basis other than the particular employee's record or contract.
The majority suggests an incongruity would eventuate if a part-time worker laboring only one day per week but eight hours that day would be given a compensation rate based upon a 40-hour week in accordance with the statutory formula for the determination of a minimum weekly wage, and that this statutory weekly wage would be double that of the petitioner here who works the same total hours per week. I concede the basic unfairness of that situation and have not discussed it more fully because of the respondent's concession that the statutory five-day minimum week applies to part-time workers who work less than five days weekly. This Court is bound by Bennett v. Fertig, supra, under the *34 doctrine of Barringer v. Miele, 6 N.J. 139, at page 144 (1951), where it was said:
"The construction of a statute by the courts, supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent."
Nor do I feel that Ostatnik v. Hamilton, 43 N.J. Super. 469 (Cty. Ct. 1957), affects the present case. There the court found as a fact that the employee was subject to being ordered to work eight hours a day, and on occasion did so. Such is not the case here.
In addition to the aforementioned reasons for my not agreeing with the majority opinion, I feel that their ruling will provide a maximum compensation rate far above their normal earnings for a large group of part-time employees who will never occupy a full-time position. One can immediately think of the class of labor composed of retired men who hold part-time jobs just to keep busy for a few hours daily. Undoubtedly, by using the manner prescribed by the majority here, the compensation rate of these workers if injured would exceed their earnings. I cannot agree that the Legislature meant such a result, since full-time workers injured as the present petitioner was would only receive two-thirds of their weekly wage or a maximum of $30 weekly.
It may well be that the entire subject of part-time employment and concurrent employment should receive legislative action. I do not conceive it a judicial function to accomplish the result which the majority reaches here.
I conclude that the holding in Langheld v. Federal Shipbuilding and Dry Dock Co., supra, is good law; that it was not overruled by our Supreme Court in Mahoney v. Nitroform Co., supra, and should not be overruled by this court. On the present record I find that petitioner was inherently a part-time employee and under such circumstances, following the Langheld case, should be given a weekly compensation rate of $15.33 based upon a four-hour work day.