EDITH ENGELBRETSON, PETITIONER-RESPONDENT, v. AMERICAN STORES, RESPONDENT-APPELLANT.

Argued December 9, 1957—Decided February 17, 1958.

*Mr. John W. Taylor* argued the cause for appellant.

*Mr. Louis C. Jacobson* argued the cause for respondent (*Messrs. Margolis & Margolis,* attorneys).

The opinion of the court was delivered

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge Francis in the Appellate Division, reported at 49 *N. J. Super.* 19 (1957).

HEHER, J. (dissenting). The issue here concerns an assessment of the quality of *R. S.* 34:15–37, as amended by *L.* 1945, *c.* 74, providing thus: " 'Wages' * * * shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. * * * Where the rate of wages is fixed by the hour, the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of the work involved. In any case the weekly wage shall be found by multiplying the daily wage by five, or if the employee worked a greater proportion of the week regularly, then by five and one-half, six, six and one-half or seven, according to the customary number of working days constituting an ordinary week in the character of work involved," and five days "shall constitute a minimum week."

The Appellate Division agreed on the nature of the hiring, but divided on the significance of the statute. The majority found that "[i]n 1954, although engaged almost every week

(20 weeks between January and the week ending June 5), most of the time (15 weeks) she worked on Wednesday and Thursday for four hours each day"; "[d]uring the other five weeks the work period was two hours each on Wednesday and Thursday in two of them and four or five hours on Thursday in the remaining three"; and, finally, "the duties of the employment were performed over two four-hour days rather than one day of eight hours duration"; and this is the hypothesis of fact upon which the majority proceeded to judgment.

The claimant was 68 years of age at the time of the accident, June 3, 1954, 70 at the time of the hearing. Her employment by American Stores began in 1942 or 1943, during the period of a labor shortage under the war economy; her husband was then American's "meat manager" in its East Orange store; there was no agreement as to the "number of hours" of the work day or the number of work days per week; she worked "whenever [she] was needed"; "whenever [she] was needed, [she] was called"; as to the daily service hours, she "was supposed to work as long as [she] was needed." The rate of pay was then 80 cents per hour; the hourly rate was $1.15 at the time of the mishap. At the outset, she worked four days per week, or more if needed, "behind the butcher counter," cutting meat and serving the trade; the meat department was in operation eight hours per day, six days a week. But whatever the daily and weekly hours of service at the beginning, there can be no doubt that long before the accident the service period had fallen into the settled pattern of two four-hour days per week, a relation basic to the claimant's employment that in all likelihood would continue.

The majority of the Appellate Division concluded, "contrary to *Langheld v. Federal Shipbuilding and Drydock Co.*, 25 N. J. Misc. 159 (*Com. Pl.* 1947)," that "in establishing the basis for computing the daily wages for an employee hired at an hourly rate of pay, the [statutory] allusion to the 'customary number of working hours constituting an *ordinary* day in the *character of the work involved*' has

reference to the regular or normal working day followed by the employer in the line or type of work in which the particular employee is engaged," citing *Ostatnik v. Hamilton*, 43 *N. J. Super.* 469 (*Cty. Ct.* 1957), and "[c]onversely, in our opinion the reference is not to the number of hours in a day the employee is called upon to work under his contract —unless the type of occupation is such that a lesser number of hours than eight are customary or perhaps necessary because of its nature."

Applying this interpretation, the holding was that the "undisputed proof shows the character of the work involved to be such that the customary number of hours in the ordinary work day is nine and the customary number of days in the work week is five," and "[a]ccordingly, petitioner's compensation rate must be reached on the basis of that work day," and "[t]he fact that the weekly rate of $30 will give the petitioner more as compensation than she was ever paid as wages" by American "cannot be regarded as significant in the exercise of our judicial function"; "[o]ur task is to construe and give effect to the intention and mandate of the Legislature," citing *Carter v. Ocean Accident & Guarantee Corporation*, 190 *Ga.* 857, 11 *S. E.* 2d 16 (*Sup. Ct.* 1940); *Morrison-Merrill & Co. v. Industrial Commission of Utah*, 81 *Utah* 363, 18 *P.* 2d 295 (*Sup. Ct.* 1933), and it is "perfectly obvious that if she was engaged to work one eight-hour day doing the very same work, the compensation rate would be $30 weekly (9 hours x $1.15 per hour x 5 days x 2/3, but reduced to the statutory maximum of $30)," and having in mind the character of the work involved, it would not be "consistent with the spirit and purpose of the legislation to reduce the compensation to approximately one-half of that sum" merely because the "duties of the employment were performed over two four-hour days rather than one day of eight hours duration."

Judge Waugh, dissenting, concluded that *Langheld, supra,* was not overruled in *Mahoney v. Nitroform Co., Inc.*, 20 *N. J.* 499 (1956), and the claimant here "was inherently a part-time employee and * * * should be given a weekly

compensation rate of $15.33 based upon a four-hour work day." He reasoned that the claimant's "contract was one whereby she worked two days per week, four hours each day at an hourly rate of $1.15"; that unlike *Mahoney v. Nitroform Co., Inc., supra,* where the employees had "contemporaneous full-time employments," here the claimant's "total employment was with [American]" and her "total future economic loss could not exceed the weekly wage which she earned in accordance with her contract of hiring"; that the Legislature "in establishing the method of computing the daily wage of piece workers here did not use as the criteria * * * the past employment experiences of other employees of the same class either generally or within the employ of the particular employer," but rather "the daily wage is found by dividing the total amount earned by the days worked according to the record of the *particular employee* injured," and there is no rational basis for "reaching a wage for piece workers and those partially paid by gratuities based upon their own records," while determining the wage of hourly workers "by looking to a basis other than the particular employee's record or contract."

The majority, invoking the rule of liberal interpretation of remedial social legislation, reasoned that "the ordinary part-time worker today may have full-time employment tomorrow" and "a part-time worker (such as a daily houseworker) may have four or five such jobs each week," and "an accident suffered in one employment by such person causes pecuniary loss as the result of the consequent physical disability in all the employments or prevents or interferes with later full-time employment"; and "[n]owhere in the Act is part-time employment mentioned, although provision is made for cases of casual employment."

And the claimant argues that it is of no significance "whether [she] worked 'full-time' or 'part-time', for nowhere in the Workmen's Compensation Act does either designation appear."

But this reasoning does not take into account, in the application of the statutory formula, the essential difference

between full-time and part-time employment and the outstanding policy to be served.

It cannot be that the legislative design was to provide for compensation benefits on the basis of full-time pay for what was essentially part-time work, no matter how brief the period of service for a day or two during the week, provided it was rendered at regular intervals and was not casual, computed at the hourly rate for full daily and weekly work by others of the same general class, where, as here, the claimant's relation to the employment was part-time in nature and likely to continue as such. Would an hour or a half hour a day for two days a week, or three days, or even one day, suffice to compute compensation on a full-time basis? Would not such a course be contrary to the essential policy of the statute, the manifest reason and spirit of the law?

The distinction between "full-time" and "part-time" service is fundamental in the principle and policy of the statute itself. The legislative formula serves to measure compensable disability where the injured part-time employee had other contemporaneous employments, or his future earning capacity would not remain the same.

Such is implicit in *Langheld,* Flannagan, J., and in *Bennett v. Fertig,* 10 *N. J. Misc.* 1021 *(Sup. Ct. 1932),* affirmed 110 *N. J. L.* 510 *(E. & A.* 1933). And in *Mahoney, supra,* where the deceased workers had contemporaneous employments, a radically different employment status, we held that the "underlying policy of the provision for wage calculation is to compensate the employee (or, here, the dependents) for the future economic loss incident to the accident," citing *Larson's Workmen's Compensation Law, sec.* 60.11, for these basic principles:

"The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future economic capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calcu-

lation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis."

Justice Brennan there referred to the New Jersey cases giving recognition to this policy concept: *Schaeffer v. De Grottola*, 85 *N. J. L.* 444 (*Sup. Ct.* 1914); *Smolenski v. Eastern Coal Dock Co.*, 87 *N. J. L.* 26 (*Sup. Ct.* 1915), affirmed 88 *N. J. L.* 387 (*E. & A.* 1915); *Jordan v. Lindeman & Co., Inc.*, 23 *N. J. Misc.* 194 (*C. P.* 1945).

As Professor Larson pointed out, *sections* 60.00; 60.22, "[s]ince the entire object is to arrive at as fair an estimate as possible of claimant's future earning capacity, a claimant who has made only part-time earnings should have his wage basis figured on part-time wages only if the employment itself or his relation to it is inherently a part-time one and likely to remain so; otherwise his earnings should be converted to a full-time basis"; "[w]hen an employee, who regularly holds two concurrent jobs, is injured in one of them, his wage will usually be based on his earnings in both if they are in a similar line of work, but on the earnings in only the one producing the injury if they are unrelated in character"; and "[j]ust as it is necessary to distinguish between situations in which claimant's inherent relation to the employment is or is not part-time, so it is also necessary to distinguish between cases in which the part-time character of the employment itself is inherent in the nature of the employment and those in which it is not."

In determining the wage base in part-time employment, the distinction is between a case in which the employment itself or the claimant's relation to it is inherently part-time, and where the employment and the claimant's inherent relation to it are "normally substantially full-time." *Ibid.*, sec. 60.20. *O'Hearne v. Maryland Casualty Company*, 177 *F. 2d* 979 (4 *Cir.* 1949) illustrates the distinction, *Ibid., sec.* 60.21, "between a claimant whose relation to the employment is inherently part-time and one whose relation, though perhaps brief, is inherently full-time * * *." Wage

experience is the means of assessing future wage loss; and it is to be discounted where it does not fairly reflect the claimant's true earning power. The claimant's probable future loss, *Larson, sec.* 60.22, "is a full-time loss only if the line of work for which he is trained and qualified will normally continue to provide full-time employment, and if he himself, in view of his age and other circumstances, will probably continue to take advantage of its full-time opportunities."

Compensation benefits, apart from medical and hospital expense, are scheduled weekly wage-loss payments as a recompense for "disability" ensuring from injury of the statutory class. *R. S.* 34:15–12, as amended by *L.* 1956, *c.* 141. See *Biglioli v. Durotest Corporation,* 26 *N. J.* 33 (1958).

We are enjoined to give to the particular terms and provisions of the statute their common and ordinary usage and significance, related to the obvious policy and purpose of the enactment. A statute is not to have an arbitrary construction, according to the strict letter, but rather an exposition to advance the meaning fairly deducible from the context. The apparent policy of the law is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. *Fischer v. Fischer,* 13 *N. J.* 162 (1953). And where the reason of the regulation is general, though the provision is special, it has a general acceptation. *Wright v. Vogt,* 7 *N. J.* 1 (1951). The declared policy is the true key to open the understanding of the statute. Words and phrases and particular provisions necessarily take color and significance from their surroundings and the evident design of the statute as a whole. *Valenti v. Board of Review of Unemployment Compensation Commission,* 4 *N. J.* 287 (1950). And the purely interpretive rule of liberal construction cannot enlarge the intent so expressed and thus be made to trench upon the legislative province. *Everhart v. Newark Cleaning & Dyeing Co.,* 119 *N. J. L.* 108 (*E. & A.* 1937).

The rule of *Mahoney, supra,* controls here, and I conceive it to be sound exegetical principle.

I would modify the judgment accordingly.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING and PROCTOR—4.

*For modification*—Justice HEHER—1.