622 A.2d 219

ARLENE KATSORIS, PETITIONER–APPELLANT, v. SOUTH
JERSEY PUBLISHING CO., T/A THE ATLANTIC CITY
PRESS, RESPONDENT–RESPONDENT.

Argued November 9, 1992—Decided March 10, 1993.

*Lawrence A. Mintz,* argued the cause for appellant (*Goldenberg, Mackler & Sayegh,* attorneys).

*Alfred H. Katzman,* argued the cause for respondent (*Horn, Kaplan, Goldberg, Gorney & Daniels,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This is a workers' compensation case. Petitioner was employed on a part-time basis, working in that employment substantially less than a so-called normal, forty-hour week. She also held separate, full-time employment. Petitioner sustained compensable injuries arising out of her part-time employment when she was involved in an automobile accident.

Although the accident arose out of her part-time employment, the Workers' Compensation Court determined that petitioner's compensation should be based on her actual wages earned in her part-time employment but the compensation award should be calculated on the basis of a full-time, forty-hour week. The Appellate Division reversed. It held that petitioner was to be compensated according to the wages earned in her part-time employment but only on the basis of her actual work week. That resulted in a substantially reduced award.

This Court granted petitioner's petition for certification. 130 *N.J.* 9, 611 *A.*2d 649 (1992).

I

Petitioner, Arlene Katsoris, then fifty-two, was employed part-time by respondent, South Jersey Publishing Company (Company), as a newspaper carrier. She delivered the Atlantic City Press newspaper seven days a week. Katsoris contemporaneously held another job as a secretary on a full-time basis. On May 13, 1987, a truck collided with petitioner's car while she was delivering papers. She suffered fractures of the arm,

shoulder blade, knee cap, and pubic bone; multiple fractures of the leg; and a cerebral concussion. Petitioner's injuries resulted in bilateral hearing loss, post-traumatic anxiety, and neurosis. Katsoris has been unable to return to her work as a newspaper carrier. After six months of recovery, however, she returned to her full-time position as a secretary. Because of her injuries, Katsoris experienced some pain and difficulty in carrying out her duties at her full-time job. However, the record does not indicate that her injuries constituted a disability that has prevented her from performing her full-time employment duties or in any way affected her compensation in that employment.

Katsoris filed a petition for workers' compensation benefits. The Company eventually conceded that her injuries arose during the course of employment and that petitioner suffered a fifty-five percent permanent partial disability.

The record discloses that petitioner devoted three hours each morning to newspaper delivery. She spent the first half-hour of every day securing each newspaper with an elastic band and covering it with a plastic bag. During the following two and one-half hours Katsoris delivered the papers to customers on a list supplied to her by respondent. The compensation court determined that Katsoris had worked seventeen-and-one-half hours per week actually delivering papers. The court, however, used a reconstructed work week of forty hours to determine petitioner's compensation award. The court found that Katsoris had earned $106.80 each week for the six days in which she had delivered the daily newspaper, and $46 for each Sunday delivery. Thus, petitioner's actual weekly wages were $152.80. The court divided petitioner's actual gross weekly revenue by her actual hours worked, determining that petitioner had been paid at an hourly rate of $8.73. The court then applied that rate to the reconstructed full or forty-hour work week. According to that calculation, petitioner would have earned

$349.25 [1] for a full week of work with the Company. Because under the statutory scheme permanently-injured employees are entitled to seventy percent of their weekly wage, up to a fixed maximum, the court found that seventy percent of petitioner's reconstructed wage was $244.44. That was sufficient to qualify petitioner for the $221 maximum weekly rate of compensation allowed to an employee who has suffered a fifty-five percent, permanent, partial disability. The compensation court thus awarded petitioner benefits for 330 weeks at a rate of $221, or $72,930.

The Appellate Division determined that petitioner should be compensated at her hourly rate for the "customary number of hours" and for the "customary number of days" constituting an ordinary week "in the character of the work involved." Accordingly, the Appellate Division found that petitioner had worked twenty-one hours a week. (The compensation court considered only the two-and-one-half hours per day that petitioner had actually delivered papers and concluded that she had worked a total of seventeen-and-one-half hours. The Appellate Division, however, included in its calculation not only petitioner's newspaper-delivery time but also the one-half hour per day that she had spent wrapping each paper in its delivery bag.) The Appellate Division determined petitioner's hourly wage to be $7.27 by dividing her actual weekly wage of $152.80 by twenty-one. It multiplied the hourly wage rate by three, which it determined to be the customary number of hours constituting a newspaper carrier's ordinary day, to reach a daily wage of $21.81. The court then calculated petitioner's weekly wage by multiplying the daily wage, $21.81, by seven, which it found to be the customary number of working days constituting a newspaper carrier's ordinary week. Accordingly, the court found $152.87 was the customary, weekly wage for the character of

---

[1] Perhaps due to typographical error, there is some discrepancy in the compensation court's determination of petitioner's weekly wage ($349.25) and the product of $8.73 × 40 hours ($349.20).

the work involved. The court awarded Katsoris benefits amounting to seventy percent of $152.87, or $106.97, for 330 weeks. Petitioner's recovery was thereby reduced to $35,-300.10.

## II

■ The use of reconstructed work weeks is not a novel method for calculating compensation benefits for workers injured in part-time employment. In *Torres v. Trenton Times Newspaper*, 64 *N.J.* 458, 317 *A.*2d 361 (1974), a minor was injured while delivering newspapers in the course of his part-time job. As a result of the accident, Torres suffered a fifteen-percent permanent loss of the use of his right arm. *Id.* at 459, 317 *A.*2d 361. At the time of his injury, he earned $7.75 per week for seven hours of work. This Court held that benefits for Torres should be calculated on the basis of a reconstructed forty-hour work week, using an hourly rate reflecting his actual hourly income. *Id.* at 462, 317 *A.*2d 361. The Court acknowledged that the workers' compensation statute had "no specific provision for a news[carrier] or other minor who works only a few hours a week in a part-time job and suffers partial or total disability as a result of a work-connected accident." *Id.* at 461, 317 *A.*2d 361. However, it was "mindful that the Work[ers'] Compensation Act is remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." *Ibid.*

The compensation court expressly found that the *Torres* decision constituted authority to use a reconstructed work week to calculate the compensation award of petitioner, though that argument was not raised by either party. However, the Appellate Division determined that a reconstructed work week, which was approved by *Torres*, could not be used because its use had been effectively overruled by statute, namely, the Workers' Compensation Act of 1979. *L.*1979, *c.* 283; *N.J.S.A.* 34:15–1 to –128.

The 1979 Workers' Compensation Act overhauled the statutory workers' compensation scheme. One significant alteration related to the compensation benefits for part-time employees. *L.*1979, *c.* 283, § 37; *N.J.S.A.* 34:15–37. That amendment changed both the definition of a part-time employee and the calculation of compensation awards of such employees. Under the amendment the definition of part-time employment was changed from an employment that did not exceed five days per week to an employment measured by the number of working days that are "customary" in an "ordinary week" for the "character of the work involved." [2] *Ibid.* An employee is "part time" if he or she works fewer than that "customary number of working days." *Ibid.* Thus, the Appellate Division read the language of the amendment to provide that compensation for part-time employees would consist simply of their hourly rate of pay multiplied by the number of hours in their regular work week. In other words, the Appellate Division believed that the amendment had removed the reconstructed work week as a basis for the calculation of compensation awards of all part-time employees.

---

[2] The exact changes can be appreciated by a comparison of the amendment with the former provision. The amendment deleted from the statute the bracketed text and added the underlined text, *viz:*

When the rate of wages is fixed by the hour, the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of the work involved. In any case the weekly wage shall be found by multiplying the daily wages by [5, or if the employee worked a greater proportion of the week regularly, then by 5½, 6, 6½ or 7, according to] the customary number of working days constituting an ordinary week in the character of the work involved[. Five days shall constitute a minimum week.]; *provided, however, if the employee worked less than the customary number of working days constituting an ordinary week in the character of the work involved, the weekly wage for the purposes of compensation under provisions of R.S. 34:15–12a only shall be found by multiplying the hourly rate by the number of hours of work regularly performed by that employee in the character of the work involved.* [*L.*1979, *c.* 283, § 37; *N.J.S.A.* 34:15–37.]

In concluding that the regular hours of a part-time employee constituted the outer limits of a compensation award, the Appellate Division perceived no distinction between part-time employees who suffer temporary disabilities and those who suffer permanent disabilities. It thus ascribed no significance to the reference in the amendment to *N.J.S.A.* 34:15–12a, which deals with compensation for temporarily-disabled employees. However, it appears that that reference was intended to link the determination of the work week for part-time employment as defined under the amended standard only to the calculation of compensation benefits for temporary disability.

The Appellate Division in *McMonegal v. E & B Management Corp.*, 214 *N.J.Super.* 481, 520 *A.*2d 406 (1986), expressed the view that the amendment had eliminated the use of the reconstructed work week only with respect to the compensation of temporarily-disabled part-time employees, not those permanently-disabled. The court reasoned that through enactment of the amendment, weekly

> wage reconstruction was expressly outlawed for calculation of temporary disability payments under *N.J.S.A.* 34:14–12a. The amendment ... left undisturbed the remainder of the statutory language which for years has been construed to authorize wage reconstruction for calculation of wages for determination of benefits for partial permanent disability. The Legislature must therefore be taken to have decided not to alter the practice and, thus, the rule of *Torres v. Trenton Times Newspaper, supra,* survives.
>
> [*Id.* at 484–85, 520 *A.*2d 406 (citation omitted).]

In *Russell v. Saddle Brook Restaurant Corp.*, 199 *N.J.Super.* 186, 488 *A.*2d 1068 (App.Div.1985), the court found that the 1979 amendment changed the analysis established by *Torres* "by precluding projection of the part-time earnings rate into a full-time weekly wage" and requiring a calculation based on "the part-time employee's actual part-time weekly wage, as defined by *N.J.S.A.* 34:15–37, without first translating the actual wage into a full-time wage." *Id.* at 190, 488 *A.*2d 1068. However, although the expression in *Russell* does not appear to confine its holding to part-time employees suffering temporary

disabilities, the petitioner in that case had in fact incurred only a temporary disability.

In failing to appreciate the distinction between part-time employees with temporary as opposed to permanent disabilities, the Appellate Division here did not acknowledge the historical and settled practices concerning the calculation of compensation benefits for injured part-time employees. At the time the Workers' Compensation Act of 1979 was passed, courts had for decades used reconstructed work weeks to compensate part-time employees. In those cases, however, the part-time employees had suffered permanent, not temporary, disability. *E.g., Torres v. Trenton Times Newspaper, supra,* 64 *N.J.* 458, 317 *A.*2d 361; *Maver v. Dwelling Managers Co.,* 34 *N.J.* 440, 447, 170 *A.*2d 35 (1961); *Mahoney v. Nitroform Co.,* 20 *N.J.* 499, 120 *A.*2d 454 (1956); *Bush v. Johns–Manville Prods. Corp.,* 154 *N.J.Super.* 188, 381 *A.*2d 65 (App.Div.1977); *Engelbretson v. American Stores,* 49 *N.J.Super.* 19, 139 *A.*2d 10 (App.Div. 1957).

The legislative history accompanying the amendments does not mention the *Torres* or other decisions that had approved the concept of reconstructed work weeks to compensate part-time employees who were permanently disabled. We must assume that the Legislature was fully cognizant of that history and practice. Thus, the presumed awareness of the Legislature of the decisional law and the settled practice of the compensation courts that authorized compensation to be based on a reconstructed work week for permanently-injured, part-time employees, the inclusion in the language of the enactment of an express reference to temporarily-injured part-time employees, and the absence of any provision that subjects permanently-injured part-time employees to the amended calculation of compensation benefits combine to support the conclusion that the Legislature did not intend to alter the practice with respect to the calculation of compensation benefits for part-time, permanently injured employees. *See McMonegal v. E. & B. Management Corp. supra,* 214 *N.J.Super.* at 484–85, 520 *A.*2d 406.

The Company also makes the argument that the elimination of the reconstructed work week for all injured part-time employees better comports with the objectives of the Workers' Compensation Act of 1979.  We are unable to conclude that the overall objectives of the Workers' Compensation Act of 1979 will be defeated or frustrated by an interpretation of the amendment that allows reconstructed work week calculations of compensation for permanently-injured, part-time employees.  This Court has recognized that "the primary goals of that overhaul of the Workers' Compensation Act in 1979 'were to eliminate awards for minor partial disabilities, to increase awards for the more seriously disabled, and to contain the overall cost of workers' compensation.' " *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 114, 469 *A.*2d 22 (1984).  The legislative modifications with respect to compensation appropriate for part-time employees, based on a distinction between those temporarily and permanently injured, serve to limit and control workers' compensation costs.  Temporarily disabled part-time employees will no longer enjoy larger awards based on the use of a reconstructed work week.  However, the goal of the Act to compensate more-fully the most-seriously injured workers (who, we must add, have suffered diminished future earning capacity, see discussion, *infra* at 547–549, 622 *A.*2d at 225–226, is met by permitting the awards of permanently-injured, part-time employees to be calculated on the basis of a reconstructed work week.  Permitting permanently-injured, part-time employees to be compensated on the basis of full work weeks but limiting the compensation recoveries of temporary employees reflects a fair compromise.  The goals of the amendment—limiting employer costs and more fully compensating the more-seriously injured—are both furthered.

We conclude the 1979 amendment was intended to limit compensation awards based on the reconstruction of part-time wages to a full work week only with respect to part-time employees who suffer temporary disabilities.  The statutory amendment had no effect on calculation of benefits for those

part-time employees who suffer disabilities that are permanent in nature.

### III

The issue remains whether the calculation of compensation of permanently-disabled, part-time employees under the standards embodied in *Torres* and like decisions would in this case require the compensation award to be based on a work week reconstructed to approximate wages in full-time employment. That issue calls initially for a consideration of the current statutory definition of what constitutes part-time employment.

Under the current statute reconstruction of the work week is appropriate only for those part-time employees who work fewer than the customary number of days constituting an ordinary week in the character of the work involved. *N.J.S.A.* 34:15–37. Katsoris, respondent contends, falls into that category. Essentially, respondent argues, because Katsoris worked the customary hours and days for the character of her work as a news-delivery person, namely, a three hours a day, seven days a week, that constituted the ordinary work week for that work and, therefore, her actual wage earned for that daily and weekly work should serve to measure the extent of her compensation.

As earlier noted, the amendatory statute altered the definition of "part-time employment." The statute deleted the standard that five days shall constitute a minimum normal work week. It substituted instead the standard that a minimum work week is the ordinary week for the character of work involved, measured by the customary number of working days in such a week. Those changes do not indicate that a person who works fewer than five days cannot be considered a part-time employee and be compensated on the basis of a full or forty-hour work week for accidental work-connected injury. The Legislature in redefining part-time employment was merely

recognizing that in some professions, occupations, or employment a full or normal work week may consist of fewer than five days. Moreover, the record contains no evidence of an objective or common standard against which the hours and days worked by those delivering newspapers can be deemed to be of the "same character" or "regular" or "customary." *See, e.g., Engelbretson, supra,* 49 *N.J.Super.* at 49, 139 *A.*2d 10 (citing as an example a regular or normal work week of fewer than forty hours per week a worker for whose occupation involved exposure to toxic substances). No implication arises that persons who work significantly fewer days each week or fewer hours each day than the norm of a five-day or forty-hour week cannot be considered part-time workers. The legislative treatment of the compensation of injured part-time employees contains not the slightest hint that the Legislature intended to alter the character or categorization of all such employment—which was specifically involved in the *Torres* case—from part-time to full-time employment. Hence, we conclude that petitioner was engaged in part-time, not full-time, employment.

■ That determination, however, does not end the matter. The use of a reconstructed work week to calculate the compensation award of a part-time employee had never been considered automatic. In awarding a part-time employee compensation based on a reconstructed work week, *Torres* focused on the fairness of such an award under all of the relevant circumstances. The Court noted its "concern[ ] about the manifest unfairness of basing a compensation award for permanent partial disability suffered by a news[carrier] upon the few dollars he received as wages for his part-time work." 64 *N.J.* at 460–61, 317 *A.*2d 361. The Court explained: "The award is intended to compensate him for his loss of earning capacity, *i.e.,* diminution of future earning power." *Id.* at 460–61, 317 *A.*2d 361. (citation omitted).

■ In this case, petitioner was engaged in contemporaneous full-time employment. In *Torres,* the injured part-time employ-

ee did not hold contemporaneous full-time employment. *See also, e.g., Bush v. Johns–Manville Prods. Corp., supra,* 154 *N.J.Super.* at 198, 381 *A.*2d 65 (noting with respect to part-time employee without contemporaneous full-time employment that "where there is some reasonable basis upon which the statutorily prescribed wage base ... may be reconstructed or given a just interpretation, even though the Legislature has failed to provide precisely for the case involved, the courts have not hesitated to fill the gap."); *Engelbretson v. American Stores, supra,* 49 *N.J.Super.* 19, 139 *A.*2d 10 (calculating benefits for part-time employee, who did not have a contemporaneous full-time position, on the basis of the wages earned by full-time employees in the same line of work). However, the Court in *Torres* did not suggest that contemporaneous full-time employment would foreclose the calculation of benefits based on a reconstructed work week for an injured part-time employee. In fact, a work week reconstructed to approximate a normal full-time work week had been judicially recognized with respect to compensating injured part-time employees who held contemporaneous full-time employment. *See, e.g., Maver v. Dwelling Managers Co., supra,* 34 *N.J.* at 477, 170 *A.*2d 35 (calculating benefits on basis of a reconstructed, forty-hour week where injury occurred in course of part-time work of the same nature as the employee's contemporaneous full-time position); *Mahoney v. Nitroform Co., supra,* 20 *N.J.* 499, 120 *A.*2d 454 (basing compensation award on a reconstructed work week for an employee with separate full-time employment as a chemist who was killed in the course of his part-time employment as a chemist).

■ The key to the availability of compensation based on a reconstructed work week for a part-time employee is not contemporaneous full-time employment but whether the disability represents a "loss of earning capacity, *i.e.,* a diminution of future earning power," *Torres, supra,* 64 *N.J.* at 460–61, 317 *A.*2d 361 or, as quoted from 2 Arthur Larson, *Larson's Worker's Compensation Law* § 60.11 at 88.189, whether the disabili-

ty "reaches into the future" and affects "probable future earning capacity" or has an "impact on probable future earnings." 64 *N.J.* at 462, 317 *A.*2d 361. That "diminution of future earning capacity" includes the "potential for full employment." *Ibid.* As the Court observed in *Maver,* the object of the workers' compensation statute was "to compensate for the inroad upon the full-time earning capacity of the victim of industrial mishap ... and of course a part-time job may be the setting of the destruction of an earning unit capable of full-time work." 34 *N.J.* at 443, 170 *A.*2d 35. Thus, as explained in *Engelbretson,* the significance of either contemporaneous or future full-time employment is its relevance to the employee's future earning capacity.

> Nor can we ignore the fact that the ordinary part-time worker today may have full-time employment tomorrow or that a part-time worker ... may have four or five such jobs each week. And an accident suffered in one employment by such person causes pecuniary loss as the result of the consequent physical disability in all the employments or prevents or interferes with later full-time employment.

[49 *N.J.Super.* at 25, 139 *A.*2d 10.]

The critical inquiry is whether petitioner has demonstrated that her injuries, which disable her from engaging in part-time employment, have disabled or will disable her with respect to her earning capacity in contemporary or future full-time employment. According to petitioner, because of her injuries her work life may be shortened and her ability to supplement her income hampered. Although the Workers' Compensation Court awarded compensation based on a reconstructed work week, it did not find that petitioner had suffered any disability that materially impaired her earning capacity in her full-time employment. It thus failed to recognize that the principles of fairness and equity that impelled the *Torres* Court to use the reconstructed work week for disabled part-time employees turn on the diminishment of future earning capacity.

We are informed by post-argument letters of counsel that petitioner did lose some time from her full-time employment.

The compensation court noted petitioner's testimony that she experienced some pain, including difficulty in walking, in the course of her full-time employment. Although those conditions undoubtedly make the performance of petitioner's full-time employment more difficult, the record contains no evidence that petitioner's performance or earning capacity in her full-time employment was impaired or that she has been forced to reduce the hours of her full-time employment. Accordingly, Katsoris lost only the ability to engage in her part-time employment. What she lost was the earning capacity from her part-time employment to supplement her full-time income, not to earn her full-time income or to engage in full-time employment. Thus, in these circumstances notions of fairness and equity do not compel the fashioning of a compensation award on the basis of a reconstructed work week. Compensation benefits based on petitioner's actual part-time earnings would sufficiently compensate her for her loss and would carry out the goal of the Act, which seeks to limit awards to work-related injuries that are permanent and serious. We would anticipate, however, that in cases involving permanent partial disabilities to part-time employees, the standard in calculating compensation benefits will be based upon diminished future earning capacity.

## IV

The Appellate Division determined, albeit for reasons that we reject, that petitioner's compensation benefits should not be calculated through resort to a reconstructed work week. However, it also disagreed with the Workers' Compensation Court's calculation of petitioner's actual weekly hours and rate of pay in her part-time employment. See discussion *supra* at 537–540, 622 *A*.2d at 220–221. We conclude that the recalculations undertaken and the compensation award determined by the

Appellate Division were correct. Accordingly, we affirm its judgment.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.