248 So.2d 405 (1971)
EXECUTIVE HOUSE BUILDING, INC.
v.
Francis J. DEMAREST, Sr., Recorder of Mortgages, and Otis Elevator Company.
No. 4434.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1971.
*406 Mmahat, Gagliano, Duffy & Giordano, Peter E. Duffy, Metairie, for plaintiff-appellant, Executive House Building, Inc.
John M. Holahan, New Orleans, for defendant-appellee, Francis J. Demarest, Sr., Recorder of Mortgages.
Drury, Lozes & Curry, James H. Drury, New Orleans, for defendant-appellee, Otis Elevator Co.
Before SAMUEL, GULOTTA and STOULIG, JJ.
GULOTTA, Judge.
In this action, plaintiff-appellant, Executive House Building, Inc., seeks a writ of mandamus directed against Francis J. Demarest, Sr., Recorder of Mortgages, to cancel and erase from the Mortgage Records for the Parish of Orleans, a written contract entered into between Executive House Building, Inc., and Medallion Realty, Inc., and defendant-appellee, Otis Elevator Company, and to further cancel a Lien Affidavit filed and recorded by defendant. Both inscriptions presently encumber immovable property and improvements owned by plaintiff.
*407 The facts are that Executive House Building, Inc., a Louisiana Corporation, is the owner of the Executive House Building located at Baronne and Perdido Streets in the City of New Orleans and formerly known as the Old Delta Building. Executive House sought to remodel by making general renovations and adding a new floor or seventh floor to the existing six-story structure. To accomplish this renovation, it was necessary to change the old elevators and remove the original elevator machinery before the remodeling took place above the sixth floor. The new elevators and overhead mechanisms were to be located above the newly added seventh floor.
On July 11, 1968, Executive House and Medallion Realty entered into a written contract with defendant in which Otis agreed to the following:
"We propose to furnish and erect the elevator installation described in the foregoing specifications for the sum of $49,665.00 * * *" (Emphasis added.)
The contract contemplated the installation of two elevators. Subsequently, Executive House Building, Inc., entered into a building contract with Fidelity Development Corp., on August 21, 1968, for certain renovations and the addition of a floor to the existing building, which contract was recorded, accepted, and finally canceled on March 11, 1969.
A fire occurred at the building on April 22, 1969. A second contract was then executed between the owner, Executive House Building, Inc., and Fidelity Development Corp., on July 1, 1969, for repairs of fire damage and further renovation, which contract was recorded and accepted.
After Fidelity Development Corp. had added the new seventh floor and plans were made to house the new elevator to be located above, Otis worked on the installation. The first elevator was accepted by the owner, Executive House Building, Inc., on April 16, 1969. On January 21, 1969, Otis Elevator sent a bill to Medallion Realty, Inc. for 70 percent of the contract price as per agreement which amount was $34,765.50, for furnishing and installing two elevators. Charles Pumilia, as representative of Fidelity Development Corp., wrote a letter dated March 28, 1969, to Otis saying Fidelity was being delayed in their completion of other work and asking Otis to complete the contract without further delay so as to enable Fidelity to meet its commitment.
In reply to Fidelity Development Corp.'s letter, Otis agreed on April 3, 1969, to accept the 70 percent payment of the total contract price in two stages with the remaining portion of the total contract to be due upon completion of the entire elevator system. The following day, April 4, 1969, Otis billed Medallion for the amount due under the compromise agreement which was $24,832.50. A telegram from the Dallas Office of Otis Elevator confirmed the figure.
Executive House responded by sending a check to Otis for $24,832.50 on April 25, 1969. However, the check bore a notation declaring insufficient funds on deposit and that on or about April 27, 1969, that check would be replaced by another and that no criminal intent could be construed from non-payment on presentation. Otis never received the due payment. The fire at the building had occurred on April 22, 1969, after which Otis filed a lien dated July 25, 1969, and recorded July 29, 1969, which lien was in the amount of the original contract price of $49,665.00. The lien was never paid.
The trial court overruled all exceptions filed by Otis in the mandamus suit other than the exception of no right of action which was referred to the merits. A hearing was held on January 16, 1970. The trial court after hearing evidence refused to grant the writ of mandamus insofar as the mandamus proceeding relates to the cancellation *408 of the lien affidavit.[1] In his written reasons for judgment the trial judge stated:
"The Court's refusal to grant the mandamus and cancel the lien filed by Otis Elevator Company was based upon the fact that the evidence satisfied the Court that Otis Elevator Company was not the General Contractor in its performance of the contract which it entered into with plaintiff, Executive House Building, Inc.
"Either the owner, Executive House Building, Inc., acting directly and through its claimed agent, Medallion Realty, Inc., or Fidelity Development Corp., was actually the General Contractor * * * Under the circumstances there was no obligation on Otis's part to file its contract. Its doing so would merely have the effect of substantiating its claim for which it was claiming a lien and privilege.
"The Court further found that Otis's contract could not be completed, either due to the fire which took place or to the fact that that work which had to be done by others (other than Otis), in order for Otis to install the elevators, was not done, and the building itself was not completed as evidenced by the fact that a contract for completing the building was entered into on July 1, 1969. Otis's lien, filed on July 29, 1969, was therefore timely filed. (See National Homestead Ass'n vs. Graham, [176 So. 1062] 147 So. 348)"
The issue before us is whether the trial judge committed manifest error in finding that Otis was not the general contractor.
The significance of the issue is that it is the classification of the status of Otis Elevator which determines the applicable provision of the Louisiana Private Works Law (LSA-R.S. 9:4801 et seq.) and thus determines whether or not defendant's lien was properly and timely preserved. A determination that Otis is a contractor makes applicable the provision of LSA-R.S. 9:4812 providing for the preservation of a lien by the recordation of a lien affidavit. A determination that Otis was a general contractor would make applicable the provision of LSA-R.S. 9:4802 which provides for the preservation of the lien by the recordation of the contract.
Appellant, Executive, contends that defendant is a general contractor and is governed by LSA-R.S. 9:4802 which reads in part as follows:
"Every contract hereafter entered into for the repair, reconstruction, erection, construction, or improvement of any work on immovable property by any undertaker, general contractor master mechanic, or engineer, or other person undertaking such general contract with the owner or his authorized agent or representatives, shall be reduced to writing, signed by the parties thereto by an authentic act, or under private signature, and shall be recorded in the office of the clerk of court of the recorder of mortgages of the parish wherein said work is to be executed, before the date fixed on which the work is to commence and not more than thirty days after the date of the said contract. Such recordation shall preserve the privileges on the building or other work of improvement, and on the land on which it is situated, in favor of every undertaker, architect, consulting engineer, contractor, master mechanic, or contracting engineer, and all sub-contractors, workmen, journeymen, cartmen, truckmen, laborers, mechanics, or furnishers of material, machinery, or fixtures as their interest may arise * *" (Emphasis added.)
Plaintiff alleges that since Otis failed to timely record the contract under § 4802, the *409 lien affidavit it subsequently filed is unenforceable.
Defendant, Otis, on the other hand, submits that it is not a general contractor governed by § 4802, but that the recordation of its lien by affidavit is proper and falls under LSA-R.S. 9:4812, the applicable portion of which reads:
"When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear. The said claim, recorded as aforesaid, shall preserve a privilege against the property for a period of one year from the date of its recordation, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such cause of action shall prescribe within one year from the date of the recordation of the claim in the mortgage records of the office of the clerk of court or the office of the recorder of mortgages."
It is well settled that all statutes must be read in pari materia whenever possible. LSA-C.C. art. 17; Schwartz Supply Company v. Zimmerman, 228 La. 861, 84 So.2d 438 (1955).
Under LSA-R.S. 9:4801, it is required that the lien whether it be claimed by the contractor or the subcontractor, or a laborer, etc., must be "evidenced as provided in the applicable provisions of this subpart." In discussing LSA-R.S. 9:4801, the appellate court in State ex rel. Henry v. 8-Mile Post Plumbing Supplies, 63 So.2d 749, 752 (Orl.App.1953) said:[2]
"* * * It therefore follows necessarily, as has already been said, that the other sections must be resorted to to determine what is meant by the words, `as herein provided'. And when we turn to the other sections we see that there are provided two different methods for the recordation of a lien  one in section 4812, by the mere recordation of a lien affidavit, and one in section 4802, by the recording of the written contract within the time required by that section."
It is well established that statutes relating to liens shall be strictly construed requiring rigid interpretation and that the privileges therein conferred shall not be extended or enlarged either by implication or the application of equitable considerations. Pringle Associated Mortgage Corporation v. Eanes, 208 So.2d 346 (La. App. 1st Cir. 1968), writ issued 252 La. 267, 210 So.2d 508; Security Homestead Association v. Schnell, 232 So.2d 898 (La.App. 4th Cir. 1970); McGill Corp. v. Dolese Concrete Company, 201 So.2d 125 (La.App.1st *410 Cir. 1967), rehearing denied June 30, 1967.
A careful study of the law in the area of "contractors" has revealed to us a need in the Louisiana jurisprudence for a clarification of the terms: (1) contractor, (2) general contractor, and (3) sub-contractor. The terms contractor and general contractor are too often used interchangeably without realization that LSA-R.S. 9:4801 et seq. differentiates those provisions which apply to each category. Our major premise is that inadvertently within the category of contractors the classifications of sub-contractors and general contractors have been included without reference to the distinction between each. The term contractor may very well include a general contractor, depending on the nature of the contract, but the term general contractor does not necessarily include the term contractor. The term general contractor contemplates the overall job or undertaking; whereas, contractor contemplates a specific job or undertaking or piece of work.
"`The word "contractor," when standing alone or not restrained by the context or particular words, may mean a subcontractor, or any person remotely engaged under contract and doing the work, as well as the original contractor. Such a person is a contractor as well as the original contractor. This has been frequently so decided, and such is the generic or more comprehensive meaning of the word.'" Mundt v. Sheboygan & F. du L. R. Co., 31 Wis. 451, 457.
"Although, in a general sense, every person who enters into a contract may be called a `contractor,' yet the word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details; the true test of a `contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." Caldwell v. Atlantic B. & A.R. Co., 161 Ala. 395, 49 So. 674; Jahn's Adm'r. v. Wm. H. McKnight & Co., 117 Ky. 655, 78 S.W. 862, 863, quoting Shear. & R. Neg. § 164; Jensen v. Barbour, 15 Mont. 582, 39 P. 906; Greening v. Gazette Printing Co., 108 Mont. 158, 88 P.2d 862, 865.
See also Winerich Motor Sales Co. v. Ochoa, Tex.Civ.App., 58 S.W.2d 193; Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390, 393.
A "contractor" follows a regular independent employment in the course of which he offers his services to the public to accept orders and execute commissions for all who may employ him in a certain line of duty, using his own means for the purpose and being accountable for the final performance. Arasmith v. Temple, 11 Ill. App. 39.
He is ordinarily understood to be the person who undertakes to supply labor and materials for specific improvements with an owner or principal. Moorhead v. Grassle, 254 Minn. 103, 93 N.W.2d 678, 681.
"A contractor is `One who formally undertakes to do anything for another; specifically, one who contracts to perform work, or supply articles.'" Jordan v. Lindeman & Co., Inc., 23 N.J.Misc. 194, 42 A.2d 781, 782.
The word "contractor", as used in connection with the building trades, means the person who contracts directly with the owner of the property to erect or construct a building or other structure or improvement belonging to the owner. Miller v. Batten, Ky., 273 S.W.2d 383, 385.
In light of the foregoing definitions of "contractor", it appears that defendant in contracting directly with the *411 building owner and its agent, Medallion Realty, to "furnish and erect" the elevator installations was in the position of a contractor. Otis Elevator represented the will of its employer only as to the result of the work, not as to the means; it offered its services to the public; it contracted to perform work and supply materials, i. e., the elevators; and it contracted directly with the property owner, Executive House, to erect an improvement.
Turning now to the consideration of the term general contractor, a general contractor, in building contract sense, is any person who contracts directly with the owner, the phrase not being limited to one undertaking to complete every part of the work. 17 C.J.S. Contracts § 11 (1963). The general contractor may do all or a large part of the work under the contract. Usually, however, he makes use of subcontractors, who furnish the labor and materials for certain parts of the work, such as the excavating, carpentry, bricklaying, plastering, or plumbing. Thus, the term general contractor is usually applied to one undertaking the entire or a large portion of the building or repair contract, not to one supplying one service amidst a large construction project supervised by another. It should be noted in the present case that Otis Elevator merely contracted with the owner or the agent of the owner to supply and erect two elevators while Fidelity Development Corp. contracted directly with the owner to take charge of the remodeling and construction of the entire seventh floor addition to the building. It would seem from these facts that if anyone falls into the classification of general contractor in the case at bar, it would be Fidelity Development Corp., not defendant. The testimony of John Mmahat, President of Executive House at the time of trial, confirms this conclusion:
"Q. The general contractor who performed the alterations and repairs and addition on the Executive House was whom?
"A. Fidelity Development Corporation."
Mr. Mmahat at another time unequivocally stated that:
"Fidelity is an authorized general contractor licensed under the State."
The case of Officer v. Combre, 194 So. 441, 442 (La.App. 1st Cir. 1940), rehearing denied April 10, 1940; writ refused May 27, 1940, in determining whether a lien existed, expressed simply a basis for classification of a general contractor:
"In the early part of 1931, Dr. Combre, defendant and owner of the house and lot sold, entered into a contract with Aurelia S. Hart, whereby Hart was to remodel and repair the house, furnishing all materials and labor therefor, for a stipulated amount. In other words, Hart was the general contractor for the entire job." (Emphasis added.)
When one is a general contractor, he impliedly has general charge of the entire, or a large portion of the project. In light of the definitions of general contractor and that plaintiff has failed to bear the burden of proving to the contrary, we can find no basis for holding defendant, Otis Elevator, to be a general contractor.
Having determined that there is a differentiation between the terms contractor and general contractor and further that defendant's position is that of a contractor but not a general contractor, we are then confronted with the determination of whether it is also a subcontractor.
A subcontractor is defined as follows:

"`Subcontractor' has a well defined meaning in building contracts, and as *412 used in its technical sense it means one who takes from the principal contractor a specific part of the work, and does not include laborers or materialmen." 17 C.J.S. Contracts § 11 (1963).
A sub-contract is a contract under or subordinate to another contract. 17 C.J.S. Contracts § 11 (1963). The subject contract in the case at bar was a completely separate entity from a second contract executed between Executive House and Fidelity Development Corp. Otis Elevator contracted directly with the owner, not with another contractor as the term subcontractor implies. John Mmahat, President of Executive House indicated in his testimony that the contract with defendant was a separate matter.
"* * * since the installation of the elevators are not a part of the general contract, they were a part of the separate contract * * *"
Mr. Mmahat attested to the conclusion that Otis was not a subcontractor:
"A. They [Otis Elevator] refused to contract with our contractor as a sub-contractor. They insisted they contract directly with the owner of the building. * * *"
An analysis of the above criteria relating to the requirements for a subcontractor leads us to the conclusion that Otis was neither a general contractor nor a subcontractor. However, the defendant's category is that of a contractor, and as such its lien rights are governed by LSA-R.S. 9:4812. Defendant timely filed its lien affidavit under § 4812. Accordingly, the judgment of the trial court refusing to grant the mandamus and refusing to order the cancellation of the lien affidavit is affirmed. Costs to be assessed to plaintiff-appellant.
Affirmed.
NOTES
[1] Defendant, Otis Elevator Co., offered no objection to the cancellation of the contract and the court rendered judgment canceling the same. This action is not on appeal and is not in issue.
[2] The former language of LSA-R.S. 9:4801 "as herein provided" referred to in State ex rel. Henry v. 8-Mile Post Plumbing Supply, has since been amended to read: "as provided in the applicable provisions of this sub-part."