CHASEZ, Judge.
Plaintiff, I — 10, Inc., instituted this suit seeking a writ of mandamus to compel defendant, William M. Justice, Jr., Clerk of Court and Ex-Officio Recorder of Mortgages for Jefferson Parish, to cancel and erase from the mortgage records of Jefferson Parish an affidavit of lien and privilege and a notice of suit filed of public record by defendant, Alodex Corporation, in M.O.B. 576, folio 001, and M.O.B. 577, folio 356 of said mortgage records. Defendant, Alodex Corporation, filed a motion to stay, an alternative exception to summary procedure, a further alternative exception of no cause of action and its answer to the plaintiff’s petition for writ of mandamus with reservation of its rights. The Clerk of Court has filed no pleadings and has made no appearance being a nominal party.
Judgment was rendered after a hearing on the writ of mandamus in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, in favor of the plaintiff and against the defendant, making peremptory the writ of mandamus and ordering *91 the inscriptions in question cancelled and erased from the mortgage records. From this adverse judgment defendant, Alodex Corporation, has suspensively appealed.
Plaintiff is the owner of property located at 6401 Veterans Boulevard, Jefferson Parish, Louisiana. On July 24, 1970 plaintiff entered into a building contract with defendant, Alodex Corporation, for the construction of a Howard Johnson Motor Lodge and Restaurant on the plaintiff’s property. The contract contained provisions for partial percentage payments to be made to the contractor as the work progressed. The total price of the contract was for $2,042,000.00. This contract, together with the builder’s bond, was duly recorded in the Jefferson Parish Mortgage Office on July 31, 1970. Pursuant to the contract between the parties work progressed until disputes arose between plaintiff and defendant and work was halted on June 14, 1971. As a result, 1-10, Inc. caused a notice of default of Alodex corporation to be recorded in the Mortgage records and served a copy thereof on Alodex Corporation on October 4, 1971.
On October 28, 1971 Alodex Corporation recorded an affidavit claiming a privilege and lien on the property of I — 10, Inc. in the sum of $463,281.81. On November 5, 1971 Alodex Corporation filed Civil Action No. 71-3088 in the United States District Court, Eastern District of Louisiana against I — 10, Inc. as defendant. Alodex then caused on November 19, 1971 a notice of suit to be recorded referring to the civil action as taken.
Plaintiff’s suit questions the legality of recordation of defendant’s affidavit of privilege and notice of suit as recorded. Plaintiff contends that defendant’s claim is based on quantum meruit and as such no lien or privilege is allowed the contractor under the statutory law of Louisiana.
Defendant’s lien and privilege on plaintiff’s property is subdivided into two categories. The first being defendant’s claim for “labor, equipment, materials, parts, supplies, and supervisory assistance” used in the partial construction of the motor lodge in the alleged value of $376,793.81, less $163,512.00, in payments received by defendant from the plaintiff, leaving a balance claimed due and owing of $213,281.81. The second assertion is based on a “potential or contingent liability to subcontractors” for $250,000.00. Thus, the total claimed by the affidavit of lien and privilege is asserted to be $463,281.81.
Plaintiff contends that by the provisions of the Private Works Law, specifically LSA-R.S. 9:4802, the defendant is not entitled to a lien or privilege and that therefore a writ of mandamus should be granted, cancelling and erasing the lien and notice of suit recorded by the defendant. Plaintiff asserts that under L'SA-R.S. 9:4802 a contractor is only allowed a lien “for any balance due him under the contract.” He also alleges that defendant’s claim is not for the balance due under the contract but is instead for quantum meruit and therefore, under the Louisiana Statutory law, defendant is not entitled to a lien on plaintiff’s property.
Defendant, however, contends that he is granted a privilege over plaintiff’s immovable property by LSA-R.S. 9:4801 and the provision of LSA-R.S. 9:4802 stating that every contractor is granted a lien “as their interest may arise.”
The merits of this case which surrounds the issues presented are not before this court. We are only concerned as to whether or not defendant has a color of right to assert a lien and privilege on plaintiff’s property. Davis-Wood Lumber Co. v. Wood, 224 La. 825, 71 So.2d 125 (1954); State ex rel. Ernest Realty Co., Inc. v. Moore, Blane and Merklein, 183 La. 927, 165 So. 147 (1936); State ex rel. Metropolitan Land Co. v. Recorder of Mortgages, 166 La. 271, 117 So. 145 (1928).
Recordation of the contract and bond places the issues presented herein within the context of LSA-R.S. 9:4801 and LSA-R.S. 9:4802. The source of LSA-R. *92 S. 9:4801 et seq. emanates from Act. No. 298 of 1926 and we find it necessary, in view of the complex nature of the issues presented, to quote at length the pertinent provisions involved in this law suit.
LSA-R.S. 9:4801. SUB-PART A. IN GENERAL
“§ 4801. Privilege on immovables for labor and materials; rank
“A. Every contractor, sub-contractor, architect, engineer, master-mechanic, mechanic, cartman, truckman, workman, laborer or furnisher of material, machinery or fixtures, exclusive of anyone who rents or leases movable property, who performs work or furnishes material for the erection, construction, repair or improvement of immovable property, or who furnishes material or supplies for use in machines used in or in connection with the erection, construction, repair or improvement of any building, structure or other immovable property, with the consent or at the request of the owner thereof, or his authorized agent or representative, or of any person with whom the owner has contracted for such work, has a privilege for the payment in principal and interest of such work or labor performed, or the materials, machinery or fixtures furnished, and for the cost of recording such privilege, upon the land and improvements on which the work or labor has been done, or the materials, machinery or fixtures furnished,” Emphasis supplied.
LSA-R.S. 9:4802
“§ 4802. Contracts to be recorded; bond; time for filing privileges ; cancellation of entries.
“Every contract hereafter entered into for the repair, reconstruction, erection, construction, or improvement of any work on immovable property by any undertaker, general contractor, master mechanic, or engineer, or other person undertaking such general contract with the owner or his authorized agent or representatives, shall be reduced to writing, signed by the parties thereto by an authentic act, or under private signature, and shall be recorded in the office of the clerk of court or the recorder of mortgages of the parish wherein said work is to be executed, before the date fixed on which the work is to commence and not more than thirty days after the date of the said contract. Such recordation shall preserve the privileges on the biiild-ing or other work of improvement, and on the land on which it is situated, in favor of every undertaker, architect, consulting engineer, contractor, master mechanic, or contracting engineer, and all sub-contractors, workmen, journeymen, cartmen, truckmen, laborers, mechanics, or furnishers of material, machinery, or fixtures as their interest may arise. The owner of such work shall require of such undertaker, contractor, master mechanic, or engineer, a bond with surety as follows: For all contracts not exceeding ten thousand dollars the amount of the bond shall be the amount of the contract. If the contract is over ten thousand dollars, but does not exceed one hundred thousand dollars, the bond shall be not less than fifty per cent of the amount of the contract but not less than ten thousand dollars in any event, if the contract is over one hundred thousand dollars but does not exceed one million dollars, the bond shall be not less than thirty-three and one-third per cent of the amount of the contract; and if the contract exceeds one million dollars, the bond shall be not less than twenty-five per cent of the amount of the contract. The bond shall be attached to and recorded with the contract in the office of the clerk of court or recorder of mortgages, as above set forth, and the condition of the bond shall be the true and faithful performance of the contract and the payment of all sub-contractors, journeymen, cartmen, workmen, laborers, mechanics, and fur-nishers of material, machinery, or fixtures jointly as their interest may arise. Every person having a claim against the *93 undertaker, general contractor, sub-contractor, master mechanic, engineer, or other person undertaking the work, shall serve upon the owner a sworn detailed statement of his claim, which service shall be effected by registered mail or personal service and shall record a sworn statement showing the total amount of his claim in the office of the clerk of court or recorder of mortgages for the parish in which the said work has been done, which service and recor-dation shall be made not later than thirty days after recordation in the office of the clerk of court or recorder of mortgages of said parish of notice of acceptance by the owner of the said work, or notice by the owner of the default of the said undertaker, contractor, master mechanic, or engineer, or other person undertaking such work. The delay within which to file claims shall not begin to run until the date of such recordation of acceptance by the said owner, or recor-dation of notice of default. If, at the expiration of the said period of thirty days, there are no such claims recorded, the clerk of the court or recorder of mortgages, shall, upon the written demand of the owner or other party interested therein, cancel and erase from the books of his office the inscription of said contract, except as to the contractor or other person undertaking the work at the request of the owner or his authorized agent or representatives, and all liability of'the said owner for labor and material employed in the said work shall cease, and his property shall not thereafter be subject to privileges growing out of claims arising under the said building contract, except that of the contractor or other person undertaking the work as hereinafter set forth. If the contractor or other person undertaking the work at the request of the owner or his authorized agent or representative joins in the request for the cancellation and erasure of the inscription of the contract, or if the owner presents a written receipt from the contractor or other person undertaking the work, showing payment in full, then the cancellation and erasure shall be effective as against the contractor or such other person undertaking the work. Should the contractor or such other person undertaking the work not join in the req%iest or not grant a receipt, then such cmntractor or such other person undertaking the work shall have an additional period of thirty days, after the thirty day period provided, in which to file his claim for any balance due him under the contract, which claim shall be sworn to and shall preserve his privilege, if recorded within the additional thirty day period in the office of the clerk of court or recorder of the parish in which the property is located. If at the end of the said additional thirty day period no such claim has been filed, then, upon the request of the owner or other interested person the said inscription of the contract shall be canceled and erased in full.” Emphasis added.
LSA-R.S. 9:4801 grants a privilege on an owner’s immovable property in favor of contractors who perform duties as outlined by the statute on such property with the consent or at the request of the owner. This is a general article and it merely grants the privilege and designates the rank of the privileges granted.
The nature and extent of a contractor’s lien and privilege is controlled by LSA-R. S. 9:4802 when a contract and bond have been properly and timely recorded pursuant to that statute.
It is well settled that statutes relating to liens are stricti juris requiring strict construction and rigid interpretation and any privileges conferred therein shall not be extended or enlarged either by implication or the application of equitable considerations. Executive House Building, Inc. v. Demarest, 248 So.2d 405 (La.App., 4th Cir., 1971); Security Homestead Association v. Schnell, 232 So.2d 898 (La.App., 4th Cir., 1970).
*94 The statutes granting liens to contractors, subcontractors, laborers, etc., under building contracts must be read in pari materia whenever possible without doing violence to rule that acts in derogation of common rights must be strictly construed. Executive House Building, Inc. v. Demarest, supra.
Defendant’s claim of privilege for “potential or contingent liability to subcontractors” for the sum of $250,000.00 is not allowable under L'SA-R.S. 9:4801 et seq.
Under LSA-R.S. 9:4802 subcontractors, laborers or furnishers of material have thirty days after notice of default has been recorded to preserve their liens on the property. If such claims are not preserved by the formalities expressed in the statute the owner does not become personally liable for their claims. A contractor is not allowed a lien for potential or contingent liability, he is only allowed a privilege for claims expressly granted by statute. Equitable considerations do not enlarge the right as granted.
Liens and privileges are also personal rights and a contractor cannot preserve a lien in favor of his subcontractor, laborers or furnishers of material when such right is not expressly granted by statutes creating the privileges.
See Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502 (1969) wherein subrogation was disallowed subcontractors who paid wages to laborers. The laborers had not filed a lien and it was held that the .subcontractors could not file a lien for them to enable the availability of subrogation.
Defendant, in the present suit, asserts its right to a claim of privilege because of the language contained in LSA-R.S. 9:4802 allowing contractors a privilege “as their interest may arise.” This provision, however, reiterates that upon re-cordation of a contract and bond the privileges on the building or work of improvement, and the land on which it is situated is preserved. The recordation of the contract and bond preserves the privilege. When a notice of acceptance or default is filed and recorded by the owner the contractor not joining in the request or granting a receipt has sixty days therefrom “in which to file his claim for any balance due him under the contract. . . . [Emphasis added] to preserve his privilege. Otherwise, his privilege being that of the recorded contract is ended and the owner’s liability ceases. -Thus the privilege in these cases is granted a contractor or undertaker only where a claim is asserted by him for his interest as it may arise under the contract.
A general contractor’s privilege or lien is not the same as that granted to subcontractors, laborers, and furnishers of material, etc. He is protected under the contract which the others are not privy to. See Officer v. Combre, 194 So. 441 (La.App., 1st Cir., 1940) wherein the provisions of Section 1 and Section 2 [now LSA-R.S. 9:4801 and 9:4802 respectively] of Act 298 of 1926 are discussed.
We are convinced that because of the stricti juris nature of the lien statutes being in derogation of common rights that defendants’ claim of privilege for $250,000.00, based on a “potential or contingent liability to contractors”, is not sanctioned or allowed for by LSA-R.S. 9:4801 et seq., and accordingly must be stricken from the purported lien.
Plaintiff asserts that Alodex Corporation’s second categorical claim for labor, equipment, materials, etc., is also unlawful as being a claim in quantum meruit. In support, plaintiff points to the notice of claim sent to I—10, Inc. by Alodex Corporation on October 28, 1971, wherein defendant stated:
“Pursuant to La.R.S. 9:4802 [sic], we herewith serve upon you sworn counterpart of claim for balance due in quantum mer-uit by I—10, Inc. . .” [Emphasis add *95 ed]. Also, the fact that in Civil Action No. 71-3088 defendant asserts a complaint “in a cause in quantum meruit. . . ”
We are of the opinion that defendant’s privilege for the claim of labor, equipment, materials, parts, supplies, and supervisory assistance for the sum of $213,281.81 has been made under color of right as a balance due under the contract. Alodex Corporation’s claim arose by virtue of the contract between the parties and, irrespective of the language used in Civil Action No. 71-3088, their claim is for a “balance due under the contract.” We are not herein concerned with the merits of the claims or the fault of breach. The validity of these claims is reserved for a complete trial on the merits. Our only inquiry is restricted to defendant’s color of right to claim a lien and privilege.
We find, accordingly, that there is a color of right in reference to defendants’ claim for $213,281.81. The claim as asserted is for a balance due under the contract. Their interest arose under the contract and the claim is supported by reference to the agreement that was timely and properly recorded. Regardless of what a claimant labels a subsequent cause of action, a contractor’s claim of privilege timely and properly filed and recorded for balance due under a contract will support a lien until the merits of that action determine otherwise.
Plaintiff, additionally, contends that where a contract specifies partial payments based on a percentage of work completed, then “any balance due” is only that amount that a contractor has earned under the partial payments provision of the contract. Such a contention may or may not be valid depending on the accuracy of the percentage payments in relation to the actual construction cost of the completed item. A contract may specify partial payments, but these payments need not reflect the actual cost of a completed item. To hold a contractor bound to guesswork is unfair both to the contractor and the owner. The actual cost could conceivably be less than the allowance for partial percentage payment and to hold an owner bound to pay for something not furnished is equally unjustified.
For the foregoing reasons the judgment of the lower court is amended and judgment is herein rendered ordering the Writ of Mandamus to be made peremptory, directing and ordering the Honorable William M. Justice, Jr., Clerk and Ex-Officio Recorder of Mortgages for Jefferson Parish, to cancel and erase from the mortgage records of his office that item of the Alo-dex Corporation’s lien and affidavit dated October 27, 1971, recorded on October 28, 1971, in Book 576, Folio 001, designated as the potential or contingent liability to subcontractors for $250,000.00. And said judgment is further amended to allow Al-odex Corporation’s purported lien and privilege to remain inscribed on the Mortgage Records of Jefferson Parish only for the sum of $213,281.81 and costs of recording such privilege. That portion of the judgment as amended is affirmed.
In all other respects the judgment of the lower court is reversed.
Reversed in part, amended and affirmed in part and rendered.