**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4058-17T1

MARY GRACE LAWSON,

 Petitioner-Appellant,

v.

NEW JERSEY SPORTS &
EXPOSITION AUTHORITY,

 Respondent-Respondent.

_____

Argued June 5, 2019 – Decided June 26, 2019

Before Judges Alvarez and Reisner.

On appeal from the Department of Labor, Division of Workers' Compensation, Claim Petition No. 2009-32887.

John Burke argued the cause for appellant (Burke & Potenza, attorneys; John Burke, of counsel and on the briefs).

Keith E. Nagy argued the cause for respondent (Capehart & Scatchard, PA, attorneys; John H. Geaney, of counsel; Keith E. Nagy, on the brief).

PER CURIAM

Petitioner Mary Grace Lawson appeals from an interlocutory order dated March 27, 2015, denying her application for reconstruction of wages pursuant to Katsoris v. South Jersey Publishing Co., 131 N.J. 535 (1993). The interlocutory order was rendered ripe for appeal when the workers' compensation court entered a final order dated April 2, 2018, approving a settlement of petitioner's compensation claim. We affirm.

As of August 2009, petitioner, then age fifty-eight, was employed part-time by the New Jersey Sports and Exposition Authority as a stadium usher. She also worked full-time stocking shelves at a Walmart store. On August 14, 2009, petitioner suffered a compensable accident at her part-time job with the stadium. In the accident, petitioner was struck by the closing doors of a freight elevator, breaking her left femur and bruising her right knee. After surgery to repair the left leg, she was on medical leave from Walmart until April 2010 due to physical restrictions. In April, she returned to work at Walmart with medical restrictions limiting her to part-time work. The company was unwilling to continue holding her full-time slot open for her, but offered her a permanent part-time slot. Petitioner refused that offer, leading to her termination. Petitioner later reapplied to Walmart for a full-time job. However, the company did not rehire

her in a full-time position.[1]  In May 2010, petitioner returned to her part-time job at the stadium, but lost the job for reasons unrelated to this case in November 2011.

At the time of the compensation hearing on February 20, 2013, petitioner had not obtained another full-time job.  According to petitioner, she applied for retail sales jobs at big-box stores, but she did not get any of those jobs.  She testified that those jobs also required stocking shelves, and she was physically unable to perform that aspect of the job.  Petitioner admitted that from July 2010 to December 2012, she collected unemployment benefits, for which she certified that she was ready, willing, and able to work.  She also confirmed at the hearing that she could work full-time at a job that did not require her to climb ladders.  At the time of the hearing, petitioner was working part-time demonstrating products at supermarkets.  In her testimony, she admitted doing a lot of physical work around her family's rural home, including mowing the grass and cutting wood with what she described as a small electric chainsaw.  She also indicated that she daily walked a mile and swam for exercise.

---

[1]  There is no evidence in the record documenting the company's reason for declining to rehire petitioner.

A-4058-17T1

When petitioner's treating physician, Dr. Mehling, testified on December 11, 2013, he stated that he was planning to remove metal rods placed in petitioner's left leg during the original surgery to repair the leg. Dr. Tiger, petitioner's medical expert, testified on June 18, 2014, opining that petitioner could not return to full-time work due to limitations caused by her injuries. By that time, petitioner had undergone the surgery to remove the rods. However, Dr. Tiger did not testify about that surgery or its effects on petitioner, because he had only examined her once, in 2012. Dr. Tiger was not aware that after her injury, petitioner had returned to work part-time as an usher, where she had to walk up and down the stadium steps. Nor was he aware that petitioner had gone back to daily walking a mile and swimming, as well as performing strenuous household duties at home.

The employer's expert, Dr. Mercurio, testified on September 10, 2014. He had examined petitioner in November 2011 and January 2013. Dr. Mercurio testified that petitioner had relatively little residual disability from the broken left femur. He also opined that petitioner's alleged reduced sensation in her right leg was "idiopathic," meaning that there was no obvious medical cause, and it was not caused by the 2009 accident. He opined that as of the January 2013

4

examination, petitioner was capable of working on a full-time basis without restrictions.

Dr. Mercurio testified that he had reviewed the operative report of the January 10, 2014 surgery to remove the hardware from petitioner's left leg. He found no evidence connecting the 2009 injury to the soft tissue infection that precipitated the surgery. Based on his review of petitioner's medical records after the second surgery, Dr. Mercurio also testified that there was no medical evidence that her left leg had gotten worse since the surgery. In fact, he noted petitioner told her doctors she was "better than she was before." She told her physiotherapists that she was raking leaves, "shoveling," and riding her lawn mower. He also noted that the surgeon, Dr. Mehling, had discharged petitioner with no restrictions. Dr. Mercurio opined that petitioner could return to full-time work after the second surgery.

In an oral opinion issued on March 27, 2015, the compensation judge found Dr. Mercurio to be a more credible expert than Dr. Tiger, for reasons the judge explained in detail. Among other things, she considered that Dr. Tiger was unaware of important information about petitioner's life activities at the time he rendered his opinion, and he only examined her once, in 2012. The

5

judge also noted that Dr. Mercurio did a "more thorough" and "much more recent" examination of petitioner.

The judge further considered that, starting in July 2010, petitioner received unemployment benefits for two and a half years based on her certification that she was "ready, willing, and able to return to the work force on a full-time basis." The judge found as fact that petitioner was "a very sturdy woman with a high level of physical strength and endurance and energy." The judge noted all of petitioner's admitted physical activities including swimming, exercise walking, lawn care, and shoveling snow. The judge concluded that petitioner failed to prove that "she lacked potential for full-time employment under the Katsoris decision."

On this appeal, we do not decide the case ab initio. Rather, we must defer to the compensation judge's factual findings so long as they are supported by sufficient credible evidence. Hersh v. Cty. of Morris, 217 N.J. 236, 242 (2014). However, the judge's legal interpretations are not binding on us. Id. at 243. After reviewing the record with those standards in mind, we find no basis to disturb the judge's decision.

As the judge recognized, where an employee suffers a permanent injury while working at a part-time job, but the injury will also permanently affect the

employee's ability to perform full-time work, the employee is entitled to benefits calculated as though she was employed full-time. "[T]he goal of the [Workers' Compensation] Act to compensate more-fully the most-seriously injured workers (who, we must add, have suffered diminished future earning capacity[)], . . . is met by permitting the awards of permanently-injured, part-time employees to be calculated on the basis of a reconstructed work week." Katsoris, 131 N.J. at 544. The Court noted that the enhanced award is intended to compensate the injured employee "for his loss of earning capacity, i.e., diminution of future earning power." Id. at 546 (quoting Torres v. Trenton Times Newspaper, 64 N.J. 458, 460-61 (1974)). That diminution includes the employee's capacity to work full time either now or in the future. Id. at 548.

On this appeal, petitioner argues that the judge misapplied Katsoris to the facts of this case. We cannot agree. Petitioner's argument is based on her version of the facts, which the judge rejected. The record supports the judge's factual findings, including her evaluation of witness credibility. In light of the facts, as the judge found them, her decision is legally correct under the standard set forth in Katsoris. Based on the facts the judge found, petitioner did not prove that her injuries from the 2009 accident diminished her capacity to perform full-time work. Petitioner's attempted reliance on the 2018 settlement of her case is

without merit. The hearing to approve the settlement was not an adversarial proceeding, and a settlement is not evidence of liability. <u>See</u> N.J.R.E. 408.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION